677 So.2d 935 (1996)
A.J., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2417.
District Court of Appeal of Florida, Fourth District.
July 24, 1996.
Rehearing, Rehearing, and Certification Denied August 29, 1996.
*936 Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee; and Sharon A. Wood, Assistant Attorney General, West Palm Beach, for appellee.
Rehearing, Rehearing En Banc, and Certification Denied August 29, 1996.
GROSS, Judge.
Appellant, a 15 year old, pled guilty to aggravated battery. The factual basis supporting the plea was that appellant kicked and stomped the victim unconscious in a junior high school library. For a short while after the beating, the victim was paralyzed from the waist down. He was transported from school to the hospital. The trial court withheld adjudication, placed appellant on community control and set a restitution hearing to determine the amount of restitution.
At the restitution hearing, the victim's mother testified that she met her son's ambulance at the hospital, where "CAT scans and EKGs and EEGs" were performed. That evening, the hospital released her son to her care because she was a nurse. The mother identified a packet of medical bills as being complete copies of the bills relating to her son's injuries from the battery. She said that the medical charges arising from the incident totalled $4,741.90. She also indicated that insurance had paid all but $2,400.98 of the bills. The mother testified that they had begun to pay "little bits" of the other bills because the medical providers had begun to "hound" them for money. The prosecutor then sought to introduce the packet of medical bills. Defense counsel objected to the introduction of the medical bills themselves as hearsay. The trial court overruled the objection.
The court ordered appellant to pay restitution of $2,498.00[1] to the victim's parents and $1,243.90 to the insurance company. Other than ruling that the victim's family was to be paid first, the court left the manner and amount of payments to the discretion of the community control officer.
Appellant first challenges the admission of the medical bills over his hearsay *937 objection to establish the amount of restitution. Hearsay is generally inadmissible in a restitution hearing where there is a proper objection to it. E.g., Rae v. State, 638 So.2d 597, 598 n. 1 (Fla. 4th DCA 1994).[2] However, in this case the medical bills were non hearsay because they constituted part of a contract that created a debt for a specific amount.
Liability for a medical expense usually arises because of a contract implied in factservices are rendered with the expectation that the patient will pay a reasonable amount in return. Nursing Care Services, Inc. v. Dobos, 380 So.2d 516, 518 (Fla. 4th DCA 1980); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA), cert. denied, 249 So.2d 36 (Fla.1971); 3 Corbin on Contracts §§ 562, 567 (1960). Fees are not typically discussed at the time of treatment. The patient's obligation is not to pay whatever the provider demands, but only a reasonable amount. A medical bill constitutes the provider's opinion of a reasonable charge for the services and an offer to settle for that amount. The patient is not legally bound by the provider's estimate; the patient may contest reasonableness by counter-offering to pay a lower amount. The patient's express or implied acceptance of the provider's estimate gives rise to an enforceable contract to pay the amount of the bill. See also North Shore Medical Ctr., Inc. v. Angrand, 527 So.2d 246 (Fla. 3d DCA 1988). Thus a witness' testimony that she received a medical bill and either made payment, part payment, or did not challenge it, is testimony concerning offer and acceptance, the words of a contract. Words of a contract, often characterized as verbal acts, are non hearsay because they have independent legal significancethe law attaches duties and liabilities to their utterance. See McCormick on Evidence § 249 (4th ed.1992); 6 Wigmore, Evidence § 1770 (Chadbourn rev. 1976). Testimony that a bill for a set amount was rendered and accepted is offered to prove the making of a contract fixing liability, not to prove the truth of the contents of the bill. See Ehrhardt, Florida Evidence § 801.6 (1996 Edition).
Florida case law has never directly confronted a hearsay challenge to medical bills.[3] Well embedded in Florida law is the recognition that a factfinder may properly consider a medical bill with a minimal evidentiary foundationthat the witness received the bill for medical services related to the injury which is the subject of the litigation. Irwin v. Blake, 589 So.2d 973 (Fla. 4th DCA 1991); East West Karate Ass'n, Inc. v. Riquelme, 638 So.2d 604 (Fla. 4th DCA 1994); Easton v. Bradford, 390 So.2d 1202 (Fla. 2nd DCA 1980); Polaco v. Smith, 376 So.2d 409 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 640 (Fla.1980); cf. Albertson's, Inc. v. Brady, 475 So.2d 986, 988 (Fla. 2nd DCA 1985), review denied, 486 So.2d 595 (Fla.1986); Garrett v. Morris Kirschman & Co., Inc., 336 So.2d 566 (Fla.1976). Relying on Garrett, we held in Irwin v. Blake that
[w]hen a plaintiff testifies as to the amount of his or her medical bills and introduces such bills into evidence, it becomes "a question for a jury to decide, under proper instructions, whether these bills represented reasonable and necessary medical expenses."
589 So.2d at 974. In the cited cases, courts rejected the contention that, as a precondition *938 to the admissibility of the bills, it was necessary to introduce expert testimony that the charges reflected in them were reasonable and necessary. This approach to medical bills obviates the necessity of producing at trial a records custodian unless some evidence is introduced that the bill is faulty. Crowe v. Overland Hauling, Inc., 245 So.2d 654, 657 n. 5 (Fla. 4th DCA 1971). As we recognized in Crowe, this evidentiary policy
eliminate[es] unnecessary cost to parties and inconvenience to the public, and can be overcome by proper proof in those few cases where the bill is not correct in one or more aspects.
Id. (quoting Smith v. Champaign Urbana City Lines, Inc., 116 Ill.App.2d 289, 292, 252 N.E.2d 381, 383 (1969).
The issue in this restitution hearing was whether the juvenile victim's parents suffered a loss or monetary expense "as a direct or indirect result of [appellant's] offense or criminal episode." § 775.089(1)(c), Fla. Stat. (1995). The victim's mother's testimony linked the medical bills to her son's injuries from the beating. The bills were properly admitted into evidence as non hearsay. At the restitution hearing, appellant was free to contest the reasonableness of the charges or the necessity of the treatment for the injuries sustained by the victim.
Appellant next contends that because he was too young to get a job, the court erred in imposing restitution since appellant did not have the ability to pay it. Section 39.054(1)(a)1, Florida Statutes (1995), requires that the amount of restitution ordered as part of community control "may not exceed an amount the child ... could reasonably be expected to make." The statute gives the trial court flexibility in fashioning restitution requirements that change as the child ages and his potential to generate income increases. See § 39.054(1)(f), Fla. Stat.(1995). Section 39.054(1)(a)2 provides that the court may conduct review hearings for a child placed on community control "for the purpose of fostering ... compliance with... restitution and community service." A court may order an unemployed child to pay restitution without a showing of present ability to pay. J.A.M. v. State, 601 So.2d 278 (Fla. 1st DCA), review denied, 613 So.2d 5 (Fla.1992). The court must only determine what the child may reasonably be expected to earn upon finding suitable employment and base the amount of restitution on those earnings. Id.; see R.F. v. State, 549 So.2d 1169 (Fla. 4th DCA 1989). Of course, the requirement that the child obtain employment suitable for his age and school status can be a condition of probation. In this case, there is no record evidence of what appellant, now 16, could reasonably be expected to earn and the trial court made no such finding. Without such a showing, there is no basis for the conclusion that appellant could reasonably be expected to pay over $3,000 in restitution, a finding required by section 39.054(1)(a)1.
We reverse the restitution portion of the order of community control and remand for a new hearing on restitution addressed to what amount of restitution appellant can reasonably be expected to make. On resentencing, we note that the trial court may not delegate the responsibility for setting the terms and conditions of payment of restitution to the Department of Juvenile Justice or other community control officers. G.A.Z. v. State, 657 So.2d 1244 (Fla. 2d DCA 1995); Boss v. State, 613 So.2d 525 (Fla. 5th DCA 1993); Strickland v. State, 610 So.2d 705, 706 (Fla. 4th DCA 1992).
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WARNER, J., and GROSSMAN, MELVIN, B., Associate Judge, concur.
NOTES
[1] The award of $2,498.00 instead of $2,400.98 is a clerical error that can be corrected on remand.
[2] Because of our conclusion that the bills were not hearsay, we do not reach the issue of whether section 39.052(4)(h), Florida Statutes (1995), applies a looser evidentiary standard for restitution hearings which are part of Chapter 39 disposition hearings than is applicable in criminal cases in general.
[3] In dicta, two cases have suggested that a victim's production of receipts or bills would have avoided hearsay problems fatal to restitution claims. Winborn v. State, 625 So.2d 977 (Fla. 2d DCA 1993); Green v. State, 652 So.2d 958 (Fla. 2d DCA 1995). Other states have rejected hearsay objections and admitted medical bills in evidence through the patient, albeit on various theories. Walters v. Littleton, 223 Va. 446, 290 S.E.2d 839, 841 (Va.1982)(bills not hearsay); Lennix v. Labee, 652 So.2d 50 (La.Ct.App.1995); Thomas v. Owens, 28 Md.App. 442, 346 A.2d 662, 667 (1975)(bills admissible under business records exception); see Pacific Gas and Electric Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 442 P.2d 641, 647, 69 Cal.Rptr. 561, 567 (1968)(bill for repairs admissible for the limited purpose of corroborating the testimony of a witness that he incurred or discharged a liability for repairs).