# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

MILTON ROMAN,

Appellant,

v.

MELISSA SOS,

Appellee.

No. 2D2022-3118

_____

September 6, 2024

Appeal from the Circuit Court for Hillsborough County; Cheryl K. Thomas, Judge.

Kathryn E. Lee of Kathryn Lee, PLLC, Tampa; and Luis G. Figueroa of Rubenstein Law, P.A., Miami, for Appellant.

Warren B. Kwavnick of Cooney Trybus Kwavnick Peets, Fort Lauderdale; n/k/a Warren B. Kwavnick of Warren B. Kwavnick, PLLC, Pembroke Pines, for Appellee.

SLEET, Chief Judge.

Milton Roman challenges the final judgment entered against him in his personal injury action against Melissa Sos. Roman filed suit against Sos as a result of a motor vehicle accident. At trial, after Roman rested his case-in-chief, the trial court granted a directed verdict in favor of Sos

on the issue of Roman's past medical expenses, ruling that Roman had not presented evidence on which the jury could conclude that the amount charged in his past medical bills was reasonable. Because Roman's evidence was sufficient to establish a prima facie claim of negligence based on past medical damages, we reverse the final judgment to the extent that it denies Roman such damages and remand for new trial on that issue only. We affirm the final judgment in all other respects.

On March 23, 2017, Sos's vehicle and Roman's work van collided as Sos backed out of her driveway. Roman alleged in his complaint that as a result, he suffered lower back[1] injuries that required surgery. The record demonstrates that Roman had an extensive prior medical history of lower back injuries and medical treatment, including occurrences that stemmed from a 2013 car accident. At trial, Roman presented the testimony of two physicians and his own testimony about the accident and resulting injuries.

Dr. Chintan Desai, a board-certified radiologist, testified that he reviewed the 2017 MRI that was taken of Roman's lumbar region after the current accident and compared it with an MRI taken as a result of the 2013 accident. According to Dr. Desai, the 2017 MRI indicated objective findings of new disc herniations related to the instant accident that were not present in 2013.

Dr. James Ronzo, Roman's orthopedic surgeon, testified that Roman was referred to him with severe lower back and lower leg pain related to the instant accident. Dr. Ronzo first performed radiofrequency

---

[1] These injuries were referred to at trial as both "lower back" and "low back" injuries.

2

ablation[2] on Roman in June 2018.  The procedure, however, did not alleviate Roman's pain, and in August 2018, Dr. Ronzo performed a laminectomy, whereby he removed a portion of bone to alleviate pressure on the nerve caused by the herniations.  Dr. Ronzo specifically testified that all the treatment he provided Roman was "medically necessary and causally related to the March 23, 2017, car crash," in which he believed Roman sustained permanent injuries.

Roman also testified, stating that after sustaining neck and back pain in the instant accident, he first sought treatment with a chiropractor four days after the incident.  Although chiropractic treatment alleviated the neck pain, his lower back pain continued and worsened to include pain radiating down his right leg.  His chiropractor therefore ordered a lumbar MRI.  Due to ongoing pain, Roman ultimately was referred to Dr. Ronzo.

During his direct testimony, Roman confirmed that the pain he had suffered from this accident was worse than what he had experienced after the 2013 accident and that it was in fact "the worst excruciating pain that [he had] ever felt."  Counsel then asked Roman if that is when he was referred to Dr. Ronzo and if he was still treating with Dr. Ronzo at the time of trial.  Roman answered both questions affirmatively.  At that point, counsel presented to Roman a summary of past medical bills for

---

[2] Dr. Ronzo explained that facet joints are "joints in the back of the spine" that are on either side of the midline and that give the spine motion, "like a hinge on a door," when a person bends over, twists, or rotates.  He further testified that radiofrequency ablation alleviates facet joint pain and that during the procedure, he puts "electronic needles along the[] facet joints and buzz[es] them with radio frequency [sic], [it] basically destroys the nerve [attached to the facet joint], turns it into . . . jelly.  And then it doesn't work anymore to tell your brain that your back hurts in this area."

treatment from his chiropractor and Dr. Ronzo, as well as the 2017 MRI imaging and Dr. Desai's diagnostic services.[3]  Roman agreed that he had incurred the bills for medical services he had received in the five years since the 2017 accident and acknowledged that he was responsible to pay the bills.  The bill summary was admitted into evidence without objection.  On cross-examination, Roman again explained his injuries related to this accident and distinguished how the pain he felt was different than what he experienced with prior lower back injuries.

After Roman rested, Sos's counsel moved for directed verdict as to Roman's request for past medical expenses, arguing that Roman "had the burden of proving reasonable and related.  At best, only Dr. Ronzo talked about his care and treatment being related, no one else.  He did not [say] anything about his medical bills' reasonableness, nor did any other physician."  Defense counsel further argued: "[A]ll [Roman] said was those are the bills.  He verified that those are the numbers and that that's what he owes.  He didn't give any testimony about it being related []or reasonable."

Counsel for Roman responded that "Dr. Ronzo established medical necessity[ and] causal relationship of all of his treatment" and that "Roman testified that these are his bills [for which] he's responsible." The trial court agreed with Sos, concluding that Roman had to establish the reasonableness of the amount charged for medical treatment:

> It's your burden of proof.  You didn't meet the burden of proof, so I grant the motion for directed verdict as to the medical bills.  You have to have the testimony in evidence, not talk about [sic].  It has to be on the record that the treatment

---

[3] The bill summary initially indicated a total of roughly $195,000 but was subsequently recalculated, and an amended version was presented to Roman, who agreed that he owed $152,655 in past medical charges.

was related to the accident and that the expense[s] were -- the treatment was medically necessary and that the cost was reasonable, and your client can testify to it, but he wasn't asked and he didn't.

. . . .

[Dr. Ronzo] didn't say his charges were reasonable, he just said they were related to the accident. . . .

[ROMAN'S COUNSEL]: He said the treatment was medically necessary and reasonable.

THE COURT:  Right.  But he didn't address the cost, and that's the burden of proof.

The trial court also denied Roman's motion to reopen his case to offer testimony regarding the reasonableness of the amount of his past medical bills, and the trial proceeded on the issue of Roman's future medical damages and pain and suffering.  At the end of trial, the jury found Roman to be seventy-five percent responsible and Sos to be twenty-five percent responsible for the accident.

Due to the previously entered directed verdict, the issue of past medical damages was excluded from the jury verdict.  And finding that Roman had not sustained a permanent injury, the jury awarded no future medical damages.  The trial court subsequently denied Roman's motion in which he sought a new trial or, in the alternative, judgment notwithstanding the verdict.

On appeal, Roman argues that the trial court erred in entering directed verdict on the issue of past medical expenses because he presented a prima facie case upon which a jury could have found that Sos was responsible for his reasonable and necessary past medical expenses stemming from the instant accident.[4]  We agree.

---

[4] In his initial brief on appeal, Roman argues that "[s]ufficient testimony was elicited from Roman and his doctors from which a jury could have decided that the medical treatment described in the bills,

5

> A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party. In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor of the nonmoving party. If there are conflicts in the evidence or different reasonable inferences that may be drawn from the evidence, the issue is factual and should be submitted to the jury.

*Fell v. Carlin*, 6 So. 3d 119, 120 (Fla. 2d DCA 2009) (quoting *Sims v. Cristinzio*, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005)). This court reviews a trial court's ruling on a motion for directed verdict de novo. *Marcum v. Hayward*, 136 So. 3d 695, 697 (Fla. 2d DCA 2014).

Here, Roman filed a one-count complaint alleging negligence on the part of Sos. In order to obtain a verdict in his favor on that allegation, Roman had to establish the four elements of a negligence action, which are "(1) a duty recognized by law; (2) breach of the duty; (3) proximate causation; and (4) damages." *See Serrano v. Dickinson*, 363 So. 3d 162, 165 (Fla. 4th DCA 2023) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). As to the damages element, Roman argued below both that he suffered past medical expenses and that he would suffer future medical expenses based on the permanent nature of his injuries.

---

which were admitted into evidence, was related to the subject collision" and that he was not required to provide "specific testimony that his medical bills were reasonable in amount." Roman argues in the alternative that the trial court abused its discretion in denying his request to reopen his case to provide additional evidence and in denying his postjudgment motion for new trial. Based on our disposition of Roman's initial argument, we need not address his alternative arguments.

"[T]he mere happening of an accident or even the fact that negligence is shown will not in and of itself produce a right to recover damages." *Shaw v. Puleo*, 159 So. 2d 641, 644 (Fla. 1964), *overruled on other grounds by Griffis v. Hill*, 230 So. 2d 143 (Fla. 1969). "[T]he plaintiff in a personal injury suit has the burden to prove the reasonableness and necessity of medical expenses." *Albertson's, Inc. v. Brady*, 475 So. 2d 986, 988 (Fla. 2d DCA 1985); *see also Shaw*, 159 So. 2d at 644 ("Among the items which the party seeking to recover must prove, even when liability is clear, is the necessity and reasonableness of the charges for medical attendance and treatment."). The plaintiff may achieve this through expert witness testimony, his or her own lay testimony, or a combination of both. *See Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 145 (Fla. 4th DCA 2018) (concluding that plaintiff established reasonableness and necessity "by the combination of [p]laintiff's testimony and the [s]urgeon's testimony, coupled with the introduction of the medical[] bills").

The question becomes what is necessary to establish the reasonableness of the medical charges. Roman's evidence included the summary of his past medical bills, which was entered into evidence without objection and was verified by his own testimony and that of his two doctors. "Although some jurisdictions consider evidence of the amount of a medical bill to be sufficient proof of reasonableness, many, including Florida, require something more." *Albertson's*, 475 So. 2d at 988. But what exactly is the "something more"?

The parties do not dispute that *Albertson's* requires that to establish a prima facie negligence claim with past medical expenses as the alleged damages element, Roman must establish that he incurred medical expenses, that the incurrence of these medical expenses was

7

necessary, and that the particular medical expenses claimed were reasonably related to injuries related to the subject accident. But Sos argued below, and the trial court agreed, that Roman did not fully establish the reasonableness of the medical expenses because he failed to provide specific evidence of the reasonableness of the dollar amounts charged by the various medical providers.

Sos asserts that "this case is governed by" this court's *Albertson's* opinion and that directed verdict was proper because Roman failed to establish "the reasonableness of the amounts charged." However, this court's repeated use of the phrase "the reasonableness and necessity of the medical bills" in *Albertson's,* 475 So. 2d at 988, does not mean that the "something more" is proof of the reasonableness of the <u>dollar amount charged</u>. The context of the *Albertson's* opinion makes clear that this court was only addressing the reasonableness and necessity of <u>the incurrence</u> of the medical bills. This court wrote:

> In *Garrett v. Morris Kirschman & Co.,* 336 So. 2d 566 (Fla. 1976), our supreme court held that expert medical testimony is not required in order to admit medical bills into evidence. There, the only testimony <u>relating the doctor's bills to the injury</u> was that of the plaintiff. The court nevertheless found that plaintiff's testimony adequately established the reasonableness and necessity of the medical bills.
> Following *Garrett,* this court, in *Easton v. Bradford,* 390 So. 2d 1202 (Fla. 2d DCA 1980), . . . held that, since plaintiff's "detailed description of the treatment procedures <u>clearly related the therapy to the accident</u>," the medical bills were properly admitted into evidence.
> Here, unlike in *Garrett* and *Easton,* plaintiff's testimony <u>does not associate each medical bill with injuries resulting from the accident</u> at Albertson's. *Cf. Polaco v. Smith*, 376 So. 2d 409 (Fla. 1st DCA 2009). Thus, we conclude that the reasonableness and necessity of the medical bills were not adequately established by Mrs. Brady's testimony.
> . . . .

8

> With the exception of her chiropractor, Mrs. Brady's physicians did not <u>relate the charges for medical services to the Albertson's incident</u>. Thus, as defense counsel pointed out at trial, some bills contained in the composite exhibit may be <u>unrelated to the Albertson's incident</u>. This danger is evident from the testimony of the doctors at trial, many of whom did not examine Mrs. Brady until nine months or more after the accident. The majority of these doctors could not say whether the injuries for which they treated Mrs. Brady <u>were the result of the accident at Albertson's</u>.

*Id.* (emphasis added) (footnote omitted).

The "something more" this court found lacking in *Albertson's* was not evidence that justified the amount expended but rather evidence that tied the incurrence of the expense to the subject accident. *See id.*; *see also Easton v. Bradford*, 390 So. 2d 1202, 1204 (Fla. 2d DCA 1980) (holding that "[a]ppellee's testimony that his treating physician referred him to Dr. Urquiza for physiotherapy and his detailed description of the treatment procedures clearly related the therapy to the accident" and thus was prima facie evidence of reasonableness that the jury properly considered).

Additionally, *Albertson's* came to this court in a different posture than the instant case. Rather than reviewing whether the defendant was entitled to a directed verdict based on the plaintiff's evidence, this court in *Albertson's* addressed the issue of whether the jury had considered inadmissible evidence in fashioning its award of damages—more specifically, whether the trial court had erred in admitting, over defense objection, medical bills where the testimony "did not relate the charges for medical services to the Albertson's incident." 475 So. 2d at 988. At trial, plaintiff Brady testified that she had some medical bills at home that she had not provided to her attorney. *Id.* Counsel then asked if a composite exhibit containing medical bills and prescription expenses

9

"contain[ed] all the bills to date other than those you've just made reference to to the best of your knowledge," and Brady responded that it was "pretty close 'cause I thought maybe fifteen or twenty —but I didn't know how many thousands it was." *Id.* Albertson's objected to admission of the evidence on the ground that "there was no predicate laid as to reasonableness and necessity." *Id.* The issue was not whether Brady could prove that the amount charged was reasonable; it was whether she related all of the medical bills admitted into evidence to the slip and fall accident at Albertson's.

This court concluded that she did not and that the trial court erred in admitting the composite exhibit and noted that Albertson's should not "be required to pay for medical expenses for which it is not responsible." *Id.* at 989; *cf. Garrett v. Morris Kirschman & Co.*, 336 So. 2d 566, 571 & n.8 (Fla. 1976) (concluding that medical bills were admissible based on plaintiff's testimony without recounting the exact testimony but including in a footnote stating that defendant below acknowledged that the testimony was "authentication of the charges shown on the bill from the pharmacy as being reasonable or related to the accident"). But, unlike the instant case, *Albertson's* did not involve a midtrial motion for directed verdict and simply does not support the trial court's granting a directed verdict on past medical expenses in this case.[5]

---

[5] Similarly, appeals filed in the reviewing court after a jury has already awarded damages are also inapplicable to the instant case. *See, e.g., Shaw*, 159 So. 2d at 642, 644 (addressing whether the evidence presented at trial supported the jury's zero damages award where doctor's testimony that child suffered whiplash went unrefuted); *Dungan v. Ford*, 632 So. 2d 159, 160 (Fla. 1st DCA 1994) (involving post-damage award review of admissibility of evidence that certain treatment was unnecessary); *Osceola Cnty. Bd. of Cnty. Comm'rs v. Sand Lake Surgery Ctr., LLC*, 320 So. 3d 950, 953-54 (Fla. 5th DCA 2021) (considering issue of admissibility of evidence and concluding that evidence was relevant to

Rather, we follow the reasoning of the Fourth District's opinion in *Walerowicz*, 248 So. 3d 140, a case more factually and procedurally similar to the instant case. In *Walerowicz*, the plaintiff filed suit against the defendant for damages sustained in a car accident. *Id.* at 142. The defendant admitted liability, and the case went to trial on "the issues of causation, permanency of the injuries, reasonableness and necessity of medical bills, and damages." *Id.* "[A]t the close of [p]laintiff's case in chief, [d]efendant unsuccessfully moved for a directed verdict on the issue of past medical expenses, contending there was no evidence of the reasonableness and necessity of the bills presented." *Id.*

As this court did in *Albertson's*, the Fourth District in *Walerowicz* used terminology that seems to reference the reasonableness of the <u>amount</u> of the charges when it stated that "[t]he patient's obligation is not to pay whatever the provider demands, *but only a reasonable amount.*" 248 So. 3d at 143 (alteration in original) (quoting *Columbia Hosp. (Palm Beaches) Ltd. P'ship. v. Hasson*, 33 So. 3d 148, 150 (Fla. 4th DCA 2010)). However, the context of the opinion only concerns proof of the reasonableness of the <u>incurrence</u> of the charges. The court explains that the plaintiff's argument on appeal was "that her testimony sufficiently established the reasonableness and necessity of all of the medical bills by describing the treatment for which the bills were incurred and relating that treatment to the injuries sustained" and "that she was not required to address specific dollar amounts, contrary to

an issue to be determined by the jury—the "reasonableness of medical expenses"—"because patients are only obligated to pay a reasonable amount"). Whether the jury's damages awarded is unsupported by the evidence or was entered upon inadmissible evidence are not issues before this court in the instant appeal. We are not reviewing a jury's damages award; we are only determining whether the issue should have gone to the jury.

[d]efendant's assertion, and all that was necessary was to link the medical treatments she received to the injury resulting from the accident." *Id.* at 144. At trial, plaintiff "described the various treatments she underwent as a result of the accident" and "testified that prior to her car accident, she had never injured her left shoulder"; that she sought medical treatment on the day of her accident "for pain and stiffness in back of her neck" and numbness "radiating from her shoulder to her fingers"; that after the pain persisted, she sought treatment at the medical group, where she "underwent different kinds of physical therapy, including massage, heat compressions, and ice compressions"; that after an MRI, "the doctors at the medical group recommended she undergo shoulder surgery"; that a partner in the group performed the surgery; that the partner and a separate medical provider performed tests to clear her for surgery; and that she also went to postsurgery physical therapy. *Id.* at 142. Her surgeon testified regarding her "shoulder injury requiring surgery and his course of treatment" and stated that "the total bill for his practice group was $58,000, which included the surgery, office visits, x-rays, and therapy," and plaintiff acknowledged on direct examination that "she still owed all of the money on the medical bills." *Id.* at 142-43.

The Fourth District concluded that "by the combination of [p]laintiff's testimony and the [s]urgeon's testimony, coupled with the introduction of the medical[] bills, [p]laintiff provided sufficient testimony to establish the reasonableness and necessity of the medical bills presented to the jury" and that "the trial court properly denied [d]efendant's motion for directed verdict." *Id.* at 145.

In the instant case, the summary of Roman's past medical expenses was admitted into evidence without objection, and Roman's testimony that he was responsible for these bills established that he had

12

suffered damages. Additionally, Dr. Desai's testimony established that the diagnostic services he provided Roman were related to Roman's 2017 MRI, and he tied Roman's disc herniations to the 2017 accident. Dr. Ronzo described how his treatment of Roman was for the purpose of alleviating the pain Roman suffered from the herniations. Dr. Ronzo specifically stated that his treatment of Roman was medically necessary and related to injuries sustained in the 2017 accident. Additionally, Roman testified that he initially sought chiropractic treatment for back and neck pain he suffered in the 2017 accident. He also testified that after the chiropractic treatment failed to alleviate his pain, he was referred for a lumbar MRI. He further stated that he was ultimately referred to Dr. Ronzo for lower back surgery related to the injuries suffered from this accident.

The testimony from Dr. Desai, Dr. Ronzo, and Roman along with the medical bill summary established that Roman incurred damages he was responsible to repay and that the expenses were for necessary treatment for injuries reasonably related to the instant accident. *See Walerowicz*, 248 So. 3d at 145; s*ee also Garrett,* 336 So. 2d at 571 ("Mr. Garrett's testimony made it a question for the jury to decide, under proper instructions, whether these bills represented reasonable and necessary medical expenses."); *Easton*, 390 So. 2d at 1204 (holding that once plaintiff established that treatment was related to the subject accident, "[a]t that point, the trial judge properly placed the question of the necessity and reasonableness of the charges within the purview of the jury"). Accordingly, directed verdict was improper as Roman presented prima facie evidence of all the elements—including damages—of his negligence claim. *See Fell*, 6 So. 3d at 120.

The standard jury instructions on negligence and damages further support this conclusion. Florida Standard Jury Instruction (Civil) 501.2(b) directs a jury to consider the "[t]he reasonable [value] [or] [expense] of [hospitalization and] medical [and nursing] care and treatment necessarily or reasonably obtained by (claimant) in the past [or to be so obtained in the future]" when constructing a damages award for medical expenses. However, Florida Standard Jury Instruction (Civil) 501.1(b) states that such a consideration is only to occur "if the greater weight of the evidence supports (claimant's) claim." In other words, the issue of the reasonableness of the amount charged only arises if the evidence supports a verdict for the plaintiff on the plaintiff's claim.

Accordingly, when determining whether the evidence would support a verdict for Roman on his negligence claim, the proper considerations for the trial court were whether Roman had established that Sos had a lawful duty; that she breached the duty; that Roman suffered a loss, injury, or damage; and that his loss, injury, or damage was reasonably related to the subject incident. *See* Fla. Std. Jury Instr. (Civ.) 401.4 (defining negligence); 401.18(a) (explaining that in order to establish a claim of general negligence, the plaintiff must show that "(defendant) was negligent in (describe alleged negligence), and, if so, whether that negligence was a legal cause of the [loss] [injury] or [damage] to (claimant . . .)); *see also* Fla. Std. Jury Instr. (Civ.) 401.12(a) ("Negligence is a legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [injury] [or] [damage] so that it can reasonably be said that, but for the negligence, the [loss] [injury] [or] [damage] would not have occurred."). If the evidence would support the claim, a directed verdict is improper. *See Fell*, 6 So. 3d at 120.

14

Furthermore, Sos was free to cross-examine Roman's witnesses and to present her own evidence regarding the necessity and reasonableness of medical expenses Roman incurred as well as the reasonableness of the amount of those damages.[6] *See Easton*, 390 So. 2d at 1204 ("[Plaintiff]'s testimony . . . clearly related the therapy to the accident. At that point, the trial judge properly placed the question of the necessity and reasonableness of the charges within the purview of the jury. Any evidence to the contrary could have been presented by [defendants] to offset the weight of [plaintiff]'s testimony.").

We reverse the final judgment to the extent that it denied Roman's claim for past medical expenses and remand for a new trial limited to that discreet issue. We affirm the final judgment in all other respects.

Affirmed in part, reversed in part, and remanded for further proceedings.

LUCAS, J., Concurs.
LABRIT, J., Concurs specially with opinion.

LABRIT, Judge, Concurring specially.

I concur in the majority decision to reverse and remand on the issue of Mr. Roman's past medical expenses because Mr. Roman met his burden to prove those damages—at least based on current standards. But I reach this conclusion on different reasoning, recognizing that there is a lack of clarity in the law on this issue.

---

[6] Sos's witness list included a board-certified neurologist, a board-certified radiologist, and an expert on medical billing and coding. None of these witnesses ever testified at trial due to the entry of the directed verdict.

Decades ago, this court explained that "[t]he burden is upon the [p]laintiff to prove the necessity and reasonablenes[s] of charges for medical attendance and treatment." *Schmidt v. Tracey*, 150 So. 2d 275, 276 (Fla. 2d DCA 1963). Our supreme court agreed in *Shaw v. Puleo*, 159 So. 2d 641, 644 (Fla. 1964), *overruled on other grounds by Griffis v. Hill*, 230 So. 2d 143 (Fla. 1969), reiterating that a party seeking to recover "must prove . . . the necessity and reasonableness of the charges for medical attendance and treatment." Since then, courts have repeatedly recognized and restated this burden. *See, e.g., Osceola Cnty. Bd. of Cnty. Comm'rs v. Sand Lake Surgery Ctr., LLC*, 320 So. 3d 950, 953 (Fla. 5th DCA 2021); *Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 143 (Fla. 4th DCA 2018); *E. W. Karate Ass'n v. Riquelme*, 638 So. 2d 604, 605 (Fla. 4th DCA 1994); *see also Granell v. Granell*, 940 So. 2d 513, 514 (Fla. 2d DCA 2006). Thus, it's clear "that the plaintiff in a personal injury suit has the burden to prove the reasonableness and necessity of medical expenses." *Albertson's, Inc. v. Brady*, 475 So. 2d 986, 988 (Fla. 2d DCA 1985).

What's less clear is the nature and extent of the evidence that a plaintiff must present to meet this burden. We know from our supreme court's holding in *Garrett v. Morris Kirschman & Co.*, 336 So. 2d 566, 571 (Fla. 1976), that expert testimony is not required to render medical bills admissible in evidence. We also know from our decision in *Albertson's* that the law requires "something more" than evidence of the amount of a bill to prove a medical expense's reasonableness. 475 So. 2d at 988. But in *Albertson's* we did not consider, and therefore did not decide, the question now before us: must a plaintiff present evidence establishing the reasonableness of the amount charged to satisfy the burden to prove the reasonableness and necessity of medical expenses?

To answer this question, I look to the language courts consistently use to describe this well-established burden. After all, "inevitably '[t]he words used by one set of persons have to be interpreted by another set of persons.' " Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 415 (2012) (alteration in original) (quoting Lord Macmillan, *Law and Other Things* 163 (1938)). Courts, including our supreme court, place the burden of proving the "reasonableness" and "necessity" of medical expenses squarely on the plaintiff, *see, e.g., Shaw*, 159 So. 2d at 644; *Albertson's*, 475 So. 2d at 988,[7] and they describe these words in the conjunctive so proof of both is required, *see Reading Law, supra*, at 116. Significantly, reasonableness and necessity are two different things. Reasonable means "within the bounds of common sense," and "[n]ot excessive or extreme" but "fair." *Reasonable*, Am. Heritage Dictionary of the Eng. Language (5th ed. 2022); *cf. Reading Law, supra*, at 419, 423. Necessary means "[n]eeded or required," "[u]navoidably determined by prior conditions or circumstances," or "inevitable." *Necessary*, Am. Heritage Dictionary of the Eng. Language (5th ed. 2022). Applying these definitions, the law requires a plaintiff to prove both that his or her medical expenses were fair and not excessive, and that they were needed or required.

---

[7] The majority questions the applicability of *Shaw* and other postverdict decisions, and it distinguishes *Albertson's*, because the procedural postures of those cases differ from the instant case. I agree that none of those decisions answers the question before us. In my view, however, the procedural differences between those cases and the instant one do not alter the initial burden of proof the plaintiff carries when seeking past medical expenses. The aforementioned decisions—as well as the instant one—all recognize that a plaintiff has the burden to prove the reasonableness and necessity of medical expenses. It does not matter when or in what legal context the trial court considers whether the plaintiff met that burden; the underlying burden of proof is the same.

This view is consistent with our jury instruction on damages, which requires a jury to consider the following element:

> The reasonable [value] [or] [expense] of [hospitalization and] medical [and nursing] care and treatment necessarily or reasonably obtained by (claimant) in the past . . . .

Fla. Std. Jury Instr. (Civ.) 501.2(b). As written, this element encompasses both the reasonableness of the <u>expense</u> of the medical treatment obtained and the necessity or reasonableness of the <u>treatment</u> itself.[8] *See id.*; *cf. Shaw*, 159 So. 2d at 644 (requiring proof of "the necessity and reasonableness of the <u>charges</u>" (emphasis added)); *Osceola Cnty. Bd. of Cnty. Comm'rs*, 320 So. 3d at 953–54 (discussing a plaintiff's burden to prove reasonableness and the factors relevant to determining whether a medical provider's charges are reasonable). Thus, the law recognizes some burden to prove the reasonableness of the amount charged or expended, in addition to the reasonableness or necessity of the treatment received.

---

[8] Our standard jury instructions are intended "to provide juries with concise, understandable statements of the law as applicable to their cases." *Capone v. Winn-Dixie Stores, Inc.*, 233 So. 2d 175, 177 (Fla. 2d DCA 1970). The majority appears to interpret our standard instruction on damages—501.2(b)—not as a statement of the plaintiff's burden of proof but as a limitation on when the issue of reasonableness of amount arises. It's true that the preceding instruction—501.1(b)—directs a jury to only consider this issue if it finds for the plaintiff on liability. *See* Fla. Std. Jury Instr. (Civ.) 501.1(b) ("If your verdict is for (defendant), you will not consider the matter of damages. But if the greater weight of the evidence supports (claimant's) claim, you should determine and write on the verdict form, in dollars, the total amount of [loss] [injury] [or] [damage] . . . ."). But in my view, this preceding instruction does not relieve a plaintiff of the burden to prove damages in the first instance, which includes the burden to prove the reasonableness and necessity of his or her medical expenses.

How, then, does a plaintiff make such a showing? The law does not currently provide a clear answer, and I do not venture to provide an all-encompassing solution. But in this case, on this record, Mr. Roman met his burden to prove that his medical expenses were reasonable and necessary. He presented testimony that detailed the treatment he received and related it to the accident. He also introduced his medical bills into evidence without objection, and he acknowledged through his testimony that he was responsible for paying the bills. He testified, "I know I've got to pay these. . . . I've got to pay everything there." This testimony, albeit brief, was significant when viewed in the context of what a medical bill really is in the eyes of the law: "the provider's opinion of a reasonable charge for the services and an offer to settle for that amount." *A.J. v. State*, 677 So. 2d 935, 937 (Fla. 4th DCA 1996). While the patient may contest the provider's opinion of what is reasonable, "[t]he patient's express or implied acceptance of the provider's estimate gives rise to an enforceable contract to pay the amount of the bill." *Id.*; *cf. Walerowicz*, 248 So. 3d at 143 ("[T]he patient's obligation is not to pay whatever the provider demands, *but only a reasonable amount.*"). The law therefore attaches legal significance to a patient's agreement to pay a medical bill. And an uncontested bill for which a patient acknowledges responsibility reflects an amount that both the provider and the patient deem reasonable.[9]

As such, Mr. Roman's testimony acknowledging that he had to pay his medical bills demonstrated that both he and his providers considered

---

[9] A plaintiff's testimony acknowledging responsibility for a medical bill also notably exposes a plaintiff to cross-examination on the issue of the bill's reasonableness, which could seriously injure a plaintiff's credibility if the amount he or she paid or agreed to pay is patently exorbitant.

the amounts charged to be reasonable.  This testimony, when coupled with the other evidence described above, was enough—based on the current state of the law—to show that the medical expenses Mr. Roman incurred were reasonable, and that the treatment he obtained was necessary.  *See Walerowicz*, 248 So. 3d at 142–45 (holding that the plaintiff met her burden to prove reasonableness and necessity, and her testimony described her injuries, explained the treatment she received, and acknowledged that she "still owed all of the money on the medical bills"); *Polaco v. Smith*, 376 So. 2d 409, 409–10 (Fla. 1st DCA 1979) ("[The plaintiff] . . . testified that she had incurred all of the medical bills as a result of the accident. . . .  Her testimony alone was sufficient predicate for allowing the jury to resolve the question of whether the medical bills were reasonable or necessary.").

Thus, while the majority and I take different paths, our journeys through this murky body of law lead us to the same place.  Mr. Roman met his burden to prove his past medical expenses, so a directed verdict on this issue was improper.

———————————————

Opinion subject to revision prior to official publication.

20