DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Appellant,

v.

**THE IMAGING CENTER OF WEST PALM BEACH, LLC,**
a/a/o **JOSE GRACIA,**
Appellee.

No. 4D21-766

[September 15, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Florence T. Barner, Judge; L.T. Case Nos. COCE-12-022674 (54) and CACE-17-19447 AP.

Andrew T. Lynn and Michael C. Clarke of Kubicki Draper, P.A., Tampa, for appellant.

Christian Kribbs of Hicks & Motto, P.A., Palm Beach Gardens, for appellee.

WARNER, J.

State Farm Mutual Automobile Insurance Company appeals a final summary judgment in favor of Imaging Center of West Palm Beach, a medical provider. Imaging Center claimed that State Farm had reimbursed it according to a Medicare fee schedule when the policy did not allow for that limitation on reimbursement. The trial court agreed and determined that Imaging Center's fee was reasonable. We reverse, finding that State Farm was not precluded from contesting the reasonableness of Imaging Center's fee, even if it did initially pay an amount consistent with the fee schedule. As there were disputed issues of fact as to the reasonableness of Imaging Center's charges, the court erred in granting summary judgment.

State Farm's insured was injured in an automobile accident. The insured received two MRI diagnostic scans at the Imaging Center, and the center billed State Farm a total of $3,600.00. State Farm paid Imaging Center $1,773.04.

Imaging Center, through an assignment of benefits from the insured, filed suit against State Farm for breach of contract, alleging that under the PIP statute, another $1,106.96 was due. State Farm answered and asserted one affirmative defense of payment, in which it claimed that it paid the instant claim pursuant to section 627.736(5)(a)1., Florida Statutes (2012), and its policy.

Imaging Center moved for summary judgment arguing that State Farm reimbursed the bills at issue according to the Medicare Part B Fee Schedule, pursuant to section 627.736(5)(a)2.f., but State Farm's policy did not provide notice that it would use the permissive fee schedule. Imaging Center also alleged no issue of material fact existed regarding the bill's reasonableness. To support the bill's reasonableness, Imaging Center filed several documents, including payments by PIP insurers and State Farm at 80% to 100% of the submitted amount and the affidavit of Imaging Center's CEO.

State Farm's response did not contest that it had not provided notice of its intent to rely on the Medicare fee schedule. It pointed out, however, that its policy endorsement provided that it would pay "80% of all reasonable expenses." The policy endorsement also provided that:

> to determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service[.]

State Farm contended this policy language was consistent with section 627.736(1)(a), which requires that a PIP insurer shall provide medical benefits at "[e]ighty percent of all reasonable expenses for medically necessary medical . . . services[.]". It also attached an affidavit of Dr. Edward Dauer attesting to the reasonableness of the amount State Farm had paid Imaging Center and the unreasonableness of Imaging Center's charges.

The trial court ultimately granted summary judgment in favor of Imaging Center. It concluded that State Farm had improperly relied exclusively on the Medicare Part B fee schedule without giving notice in its policy provisions that it would use that schedule. Relying on Imaging Center's CEO's affidavit and never mentioning Dr. Dauer's affidavit for

2

State Farm, the court determined that Imaging Center had made a prima facie case that its fee was reasonable, stating that State Farm had not raised a colorable issue of fact. The court entered judgment for $1,106.98 plus interest as well as determining Imaging Center's entitlement to attorney's fees. State Farm then filed an appeal of the judgment.

We review de novo an order granting summary judgment. *Restoration Constr., LLC v. SafePoint Ins. Co.*, 308 So. 3d 649, 651 (Fla. 4th DCA 2020).

State Farm contends that even if it did reimburse Imaging Center based upon the Medicare fee schedule without giving proper notice in its policy, it is still entitled to contest the reasonableness of Imaging Center's fee and to use the Medicare fee schedule as part of its defense to the issue of the reasonableness of the provider's fee. We agree.

The relevant portions of section 627.736(5)(a)1. and 627.736(5)(a)2., Florida Statutes (2012), are set forth below:

> **(5) Charges for treatment of injured persons.—**
>
> (a) 1. Any . . . clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount . . . *With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service*, treatment, or supply.
>
> 2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
> . . . .
> f. For all other medical services, supplies, and care, *200 percent of the allowable amount under the participating physicians schedule of Medicare Part B.*

(Emphasis added). The relevant portion of State Farm's policy, an endorsement, stated that State Farm will pay for 80% of all reasonable medical expenses incurred for medically necessary services and the

endorsement used the same language regarding the determination of reasonableness as is used in section 627.736(5)(a)(1).

It is undisputed in this case that State Farm's policy did not give notice to its insured that it elected to use the Medicare fee schedules pursuant to section 627.736(5)(a)2. as the basis for calculating reimbursements. It is also undisputed that State Farm paid Imaging Center based on eighty percent of 200% of the allowable amount provided for the services in the Medicare Part B fee schedule. The trial court found that State Farm was allowed to contest the reasonableness of the charge, but State Farm could not rely exclusively on the Medicare fee schedule to assess the reasonableness of Imaging Center's charges, citing in support *Geico General Insurance Co. v. Virtual Imaging Services, Inc.*, 141 So. 3d 147 (Fla. 2013), and *Allstate Insurance Co. v. Orthopedic Specialists*, 212 So. 3d 973 (Fla. 2017). Because the court found that State Farm had relied on the Medicare fee schedule alone, it rejected its claim of reasonableness of the payment.

State Farm argues that the trial court erred, because it can contest the reasonableness of the Imaging Center's charges under section 627.736(5)(a)1. based on the Medicare fee schedule. We agree. In *Progressive Select Insurance Co. v. Emergency Physicians of Central Florida,* 202 So. 3d 437 (Fla. 5th DCA 2016), Progressive, like State Farm, paid a PIP provider based upon the Medicare Part B fee schedule, although it had not elected to pay pursuant to the schedule as required by statute. The court concluded that "despite Progressive's failure to elect to use the fee schedule limitation in its policy, it is not precluded from having an opportunity to litigate the reasonableness of [the provider's] bill" under the statute. *Id.* at 438. Neither *Virtual Imaging Services* nor *Orthopedic Specialists* hold to the contrary.

The trial court relied on the affidavit of the Imaging Center's CEO to determine reasonableness and appeared to have rejected the affidavit of Dr. Dauer as raising an issue of material fact. While State Farm challenges the CEO's affidavit as conclusory, we disagree. It was based on personal knowledge, market prices in the community, and prices paid by other PIP providers. *See also Walerowicz v. Armand-Hosang,* 248 So. 3d 140, 143 (Fla. 4th DCA 2018) (recognizing that "expert testimony is not required to establish the reasonableness . . . of medical bills; instead, a plaintiff's lay testimony may adequately establish the reasonableness . . . of the medical bills").

On the other hand, the Imaging Center argues that Dr. Dauer's affidavit opining on the reasonableness of Imaging Center's charges was likewise

conclusory and that Dr. Dauer relied solely on the Medicare Part B fee schedule.  However, our review of the affidavit shows that he clearly relied on more than just the Medicare fee schedule.

Dr. Dauer is a licensed physician since 1976 and Board Certified in Diagnostic Radiology.  He is the director of radiology at Florida Medical Center Hospital in Lauderdale Lakes and a managing member of Broward P.E.T. Imaging Center, L.L.C. in Lauderdale Lakes.  He listed significant qualifications to opine as to the reasonableness of Imaging Center's charges.  While he considered the Medicare Part B fee schedule in opining on the reasonableness of the charges, he also attested that he relied on reimbursement levels in the community, payments that he accepted from all types of payors at his imaging center, various fee schedules with third-party insurance carriers, his company's contracts with various insurance carriers, and other sources.  Based upon his experience, he opined as to a reasonable range of charges for MRI scans and concluded that that Imaging Center's charges were not reasonable because they exceeded the amount "usually and customarily accepted as full payment" for these services.[1]

We do not find that Dr. Dauer's affidavit is insufficient either as to his qualifications or the data on which he relied in giving his opinion.  While the court mentioned at the hearing that Dr. Dauer relied too much on reimbursements rather than charges made by various similar providers, section 627.736(5)(a)1. specifically authorizes an insurer to use such data:

> With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges *and payments accepted* by the provider involved in the dispute, and *reimbursement levels* in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and *other information* relevant to the

---

[1] Appellee also argued that Dr. Dauer's affidavit did not meet the *Daubert* test as codified in section 90.702, Florida Statutes.  Recently, the Third District determined that Dr. Dauer's similar affidavit in a nearly identical case did satisfy *Daubert.  See State Farm Mut. Auto. Ins. Co. v. M & E Diagnostic Servs., Inc.,* No. 3D20-1193, 2021 WL 3641492 (Fla. 3d DCA August 18, 2021).  We agree with that opinion.  Moreover, we also agree with *United Automobile Ins. Co. v. Progressive Rehab.,* No. 3D21-108, 2021 WL 3072936, at *4 (Fla. 3d DCA July 2, 2021) that "[n]othing in the rule prohibits expert opinion testimony based on experience."

> *reasonableness of the reimbursement* for the service, treatment, or supply.

(Emphasis added). Dr. Dauer considered many of these factors to arrive at his opinion. That he used the Medicare Part B fee schedule as one of his data points is allowed as "other information relevant to the reasonableness of the reimbursement." Because his opinion was based upon statutorily authorized criteria, the trial court erred in disregarding it.

Dr. Dauer's affidavit conflicted with the affidavit of Imaging Center's CEO on the issue of the reasonableness of Imaging Center's charges and created a material issue of fact. Reasonableness of the charge was the central issue in the case. The trial court erred in granting summary judgment.

For the foregoing reasons, we reverse the final summary judgment and remand for further proceedings.

*Reversed and remanded.*

CONNER, C.J., and GROSS, J., concur.

*   *   *

**Not final until disposition of timely filed motion for rehearing.**

6